IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| PENI COX, an individual,<br><br>        Plaintiff,<br><br>vs.<br><br>RECONTRUST COMPANY, N.A., *et al.*,<br><br>        Defendants. | MEMORANDUM DECISION RELATING TO THE COURT'S ORDER OF JUNE 11, 2010<br><br><br><br>Case No. 2:10-CV-492 CW |

The following memorandum decision explains the reasons for the court's order of June 11, 2010 granting and denying various motions in this action.

## BACKGROUND

In August 2007, Plaintiff Peni Cox entered into a mortgage loan for $123,000 for a home in St. George, Utah. The home loan originated with Defendant New Line Mortgage. New Line sold the underlying promissory note; Defendants have represented that Ms. Cox's note is now held by Fannie Mae. In January 2009, Ms. Cox defaulted on her loan. Defendant ReconTrust Company, N.A. filed a notice of default and election to sell Ms. Cox's home in August 2009. The notice names Defendant Mortgage Electronic Systems, Inc., or MERS, as the beneficiary of the note on her home, and names BAC Home Loans Servicing, LP f/k/a Countrywide Home Loans Servicing LP as the holder of the beneficial interest of the trust deed. MERS has no ownership interest in the note, but is only acting as a nominee beneficiary. In November 2009, Ms. Cox received a notice of a trustee's sale to be conducted by ReconTrust.

On April 29, 2010, Ms. Cox filed this action against the Defendants in the Utah state court in Washington County, Utah. In her Complaint, Ms. Cox asserts that ReconTrust is not authorized to conduct trustee's sales in Utah because (1) it is a "foreign corporation" not registered to transact business pursuant to Utah Code Ann. § 16-10a-1501 and (2) it is not a qualified to act as a trustee under Utah Code Ann. § 57-1-21. Ms. Cox also alleges that Defendant Bank of America violated the Real Estate Settlement Procedures Act, ("RESPA"), 12 U.S.C. § 2605 *et seq.*, because it did not provide her with loan documents in response to her written requests. Additionally, Ms. Cox asserts other Utah state law causes of action against the Defendants including breach of contract, breach of the implied covenant of good faith and fair dealing, quiet title and declaratory judgment.

On May 17, 2010, Ms. Cox filed an *ex parte* motion for a temporary restraining order seeking to prevent the trustee's sale of her home. Defendants did not receive notice of this motion. The same day, the state court granted Ms. Cox's motion and issued her proposed TRO. The TRO precluded ReconTrust from foreclosing on Ms. Cox's home.[1] The TRO was to be in effect until such time as a hearing was scheduled on a preliminary injunction.

Also on May 17, 2010, Ms. Cox filed a motion for preliminary injunction. In that motion, she sought to enjoin all of the Defendants not only from foreclosing on her property, but also from conducting any trustee's sales in the entire state of Utah. (Ms. Cox clarified at the hearing on these motions that while she included all named Defendants in her request for injunctive relief and proposed order, she intended only that ReconTrust be enjoined.) Defendants received no notice of Ms. Cox's motion for an injunction or for any hearing on it. Five days later

---

[1] Ms. Cox represented at oral argument that the Defendants are now in possession of the home.

on a Saturday, May 22, 2010, the state court signed and issued Ms. Cox's proposed preliminary injunction without holding a hearing. The injunction precludes all of the Defendants from conducting any trustee's sales in Utah.

Defendants contend that they ceased all trustee's sales of residential and commercial properties in Utah once they became aware of the state court's injunction. ReconTrust states that it postponed over 400 foreclosure sales and that over 900 of its pending foreclosure sales would have been affected by the preliminary injunction in the near future.

On May 26, 2010, Defendants removed the action to this court, citing the RESPA claim as grounds for federal jurisdiction. On June 1, 2010, Ms. Cox moved to remand this action, stating that she intended to amend her complaint to drop the RESPA claim. She filed a motion to amend and an amended complaint a day later. Though the Amended Complaint still asserts that this court has federal question jurisdiction, an assertion which Ms. Cox states is a clerical error, the RESPA claim has been removed. After filing her Amended Complaint, Ms. Cox moved again to remand the action to state court. Ms. Cox also filed for partial summary judgment on her claims with respect to Utah's registration and trustee requirements.

On June 4, 2010, the Defendants moved the court to vacate or modify the state court's preliminary injunction. In support, they argue that the Utah state registration and trustees statutes are preempted by the National Banking Act, 12 U.S.C. § 21 *et seq*. Defendants also maintain that the circumstances surrounding the state court's issuance of the injunction amount to a due process violation, and that the state court was incorrect on the merits of the state law.

On June 10, 2010, the court conducted a hearing on all motions except for Ms. Cox's motion for summary judgment. On June 11, 2010, the court issued an order that granted Ms. Cox's motion to amend, denied her motions to remand, deferred ruling on her motion for

summary judgment, and granted the Defendants' motion to dissolve the injunction. In that order, the court indicated that a memorandum decision would issue shortly explaining the reasons for those orders.

## ANALYSIS

### I. Subject Matter Jurisdiction

The threshold question here is whether the court has subject matter jurisdiction over this action. Neither party has argued that diversity jurisdiction would apply here, and in any event, the fact that there are fictitious defendants against whom there are no jurisdictional allegations makes such jurisdiction unlikely. Accordingly, the court must remand to state court unless there is federal question jurisdiction.

Federal court jurisdiction for purposes of removal from a state court is determined based on the allegations in the complaint at the time the case is removed to federal court. *Pfeiffer v. Hartford Fire Ins. Co.,* 929 F.2d 1484, 1488 (10th Cir. 1991). In this case, Ms. Cox asserted a claim for violations of RESPA. in her Complaint filed in state court. (Dkt No. 1, Attachment 1, ¶¶ 12, 60-62.) Indeed, Ms. Cox alleges that the court has jurisdiction under 28 U.S.C. § 1331, which is the federal law granting the federal court jurisdiction in cases arising under the laws of the United States. Thus, at the time of removal, the Complaint both alleged a federal cause of action and expressly asserted a basis for jurisdiction in the federal court.

It is true that Ms. Cox moved to amend her Complaint to delete the federal cause of action. That motion was granted because the Defendants conceded that it should be, and the Amended Complaint is now the operative complaint in this action. While the Amended Complaint still unintentionally asserts that federal question jurisdiction is present, it no longer asserts the claim under RESPA. Accordingly, it would be within the court's discretion to remand

this action back to state court *See, e.g. Pfeiffer,* 929 F.2d at 1488. But the court is not required to remand the case either: if a basis for jurisdiction remains despite the fact that no federal claim is expressly asserted, the court retains jurisdiction. *See id.* The court, therefore, must determine if there is a legitimate ground upon which to retain this action.

There are two possible grounds for concluding that the court should retain jurisdiction over this action. First, the court may exercise supplemental jurisdiction under 28 U.S.C. § 1367 if it decides that Ms. Cox's state law claims "are so related to" her RESPA claim "that they form part of the same case or controversy." This conclusion holds even though the RESPA claim has been dropped from the Amended Complaint. *See Pfeiffer*, 929 F.2d at 1489 (court has discretion to exercise supplemental jurisdiction even if plaintiff amends complaint to exclude federal claims). The second ground is if there is federal question jurisdiction even absent any express federal claim in the operative complaint under a doctrine known as "complete preemption." *See, e.g.*, *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6-8 (2003) and *Shmeling v. Nordam*, 97 F.3d 1336, 1339 (10th Cir. 1996).

The first possibility seems quite unlikely to give the court jurisdiction. Ms. Cox's allegedly unfulfilled request for documents from Bank of America appears to have only a tenuous factual relation to her allegation that ReconTrust lacks the power to sell her home. Because, however, complete preemption is present, as explained below, the court need not resolve the possibility of supplemental jurisdiction.

A. **Complete Preemption**

In the absence of diversity jurisdiction, a civil action filed in a state court may be removed to federal court if a claim "aris[es] under" federal law. 28 U.S.C. § 1441(b). "To determine if a claim arises under federal law, courts examine the 'well pleaded' allegations of the complaint

and ignore potential defenses. . ." *Beneficial Nat'l Bank*, 539 U.S. at 6 (citation omitted). Accordingly, as a general rule, "a defense that relies on. . . the pre-emptive effect of a federal statute will not provide a basis for removal." *Id.* (citations omitted).

"Congress has, however, created certain exceptions to that rule." *Id.* In one "unusual pre-emption provision," Congress expressly provides for removal to federal court of all "tort actions arising out of nuclear accidents," even if those actions are brought in state court and allege only state law causes of action. *Id.* (citation omitted). In other instances, the Supreme Court has found that even absent express statutory language allowing for removal of complaints stating only state law causes of action, it can be inferred from relevant federal statutes and the context of the legislation that it was Congress's intent to allow for such removal by "complete pre-emption." *Id.* at 7.

In *Beneficial Nat'l Bank*, the Supreme Court outlined the parameters of the complete preemption doctrine. First, the Court cited two of its cases which ruled that state law claims implicating § 301 of the Labor Management Relations Act and state law claims involving administration of plans under the Employee Retirement Income Security Act are completely preempted, creating federal question removal jurisdiction. *See id.* at 7-8. After reviewing these precedents, the *Beneficial Nat'l Bank* Court summarized when complete preemption arises:

> Thus, a state claim may be removed to federal court in only two circumstances-when Congress expressly so provides, such as in the Price-Anderson Act, or when a federal statute wholly displaces the state-law cause of action through complete pre-emption. When the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law. This claim is then removable under 28 U.S.C. § 1441(b), which authorizes any claim that "arises under" federal law to be removed to federal court. In the two categories of cases where this Court has found complete pre-emption-certain causes of action under the LMRA and ERISA-the federal statutes at issue provided the exclusive cause of action for the claim asserted and also set forth procedures and remedies governing that cause of action.

6

*Id.* at 8 (footnotes and citations omitted). *See also Shmeling*, 97 F.3d at 1342 (state law cause of action is removable under complete preemption when "federal law not only preempts a state law to some degree but also substitutes a federal cause of action for the state cause of action, thereby manifesting Congress's intent to permit removal").

The *Beneficial Nat'l Bank* Court then considered whether a complaint alleging state law usury claims against a national bank was removable to federal court even though the complaint made no federal claims. It held that because the National Banking Act completely preempts any state usury claim against a national bank, the action could be removed. *See Beneficial Nat'l Bank*, 539 U.S. at 11. In support of this ruling, the Court first cited to 12 U.S.C. § 85, which sets "substantive limits on the rates of interest that national banks may charge." *See* 539 U.S. at 9. The Court then moved to 12 U.S.C. § 86, which "sets forth the elements of a usury claim against a national bank," and establishes the statute of limitations and remedies for such a claim. *Id.* Further, the Court considered the "longstanding and consistent construction of providing an exclusive federal cause of action for usury against national banks" in its case law. *Id.* Moreover, the Court "recognized the special nature of federally chartered banks." *Id.* The Court concluded that:

> The same federal interest that protected national banks from the state taxation that Chief Justice Marshall characterized as the "power to destroy," supports the established interpretation of §§ 85 and 86 that gives those provisions the requisite pre-emptive force to provide removal jurisdiction. In actions against national banks for usury, these provisions supersede both the substantive and the remedial provisions of state usury laws and create a federal remedy for overcharges that is exclusive, even when a state complainant, as here, relies entirely on state law. Because §§ 85 and 86 provide the exclusive cause of action for such claims, there is, in short, no such thing as a state-law claim of usury against a national bank. Even though the complaint makes no mention of federal law, it unquestionably and unambiguously claims that petitioners violated usury laws. This cause of action against national banks only arises under federal law and could, therefore, be removed under § 1441.

*Id.* at 11.

## B. Complete Preemption under the National Banking Act in this Action

Here, there is no dispute that ReconTrust is a national bank governed by the National Banking Act. There is also no dispute that ReconTrust was acting in its capacity as a national bank when it served as a trustee and began sale proceedings against Ms. Cox's property. The Defendants have argued that the National Banking Act preempts Ms. Cox's Utah state law claims for failure to register as a foreign corporation and for failure to meet Utah's statutory requirements to act as a trustee. The question becomes whether the National Banking Act completely preempts these Utah causes of action, allowing for removal in this case. As explained below, the answer to this question is yes on both counts.

Initially, in the area of national banking, the Supreme Court has repeatedly held that the nature of a preemption analysis is different than in other areas of law. While there is a general presumption that state laws are not preempted by federal law, this presumption does not apply in the context of national banking. *See United States v. Locke*, 529 U.S. 89, (2000) ("[A]n 'assumption' of nonpre-emption is not triggered when the State regulates in an area where there has been a history of significant federal presence ," such as national banking.). To the contrary, when reviewing a state law that regulates the activities of a national bank, a court must determine whether that regulation "prevent[s] or significantly interfere[s] with the national bank's or the national bank regulator's exercise of its powers." *Watters v. Wachovia Bank, N.A.*, 550 U.S. 1, 12 (2007). If the state regulation "significantly impair[s] the exercise of authority, *enumerated or incidental under the NBA*, the State's regulations *must* give way." *Id.* (emphasis added). In other words, Congress' grant of either enumerated or incidental powers to a national bank will "ordinarily" preempt "contrary state law." *Id.* at 11 (citation omitted).

On the other hand, it is clear that states "have always enforced their *general* laws against national banks." *Cuomo v. Clearing House Ass'n, L.L.C.*, 129 S.Ct. 2710, 2720 (2009) (emphasis added). Such general laws include universally applicable state fair lending laws. *See id.* at 2721-22. Accordingly, there is a clear dichotomy between state laws that directly interfere with a national bank's "efficient exercise" of enumerated and incidental powers bestowed upon it by the National Banking Act and those state laws that do not. *Watters*, 550 U.S. at 13. The former are preempted, while the latter are not.

It is true that the Supreme Court has not expressly ruled that any state law cause of action that is preempted against a national bank by the National Banking Act is *per se* completely preempted and therefore subject to removal. Cases like *Beneficial Nat'l Bank*, *Watters*, and *Locke*, however, are clear in tipping the scales toward complete preemption. An analysis of Ms. Cox's state statutory registration and trustee claims convinces the court that complete preemption requires the court to retain jurisdiction here.

### 1. Ms. Cox's claim under Utah Code Ann. § 16-10a-1501.

Ms. Cox's first state law claim subject to complete preemption is under Utah Code Ann. § 16-10a-1501. That statute mandates that any "foreign corporation may not transact business in this state until its application for authority to transact business is filed by the [relevant Utah state] division." Utah Code Ann. § 16-10a-1501. If the application by a foreign corporation is not approved and filed by the state agency, that corporation may not file an action in state court and is subject to civil penalties. *See* Utah Code Ann. § 16-10a-1502. Among the civil penalties if a corporation is found to be in violation of the statute is that a "court shall issue. . . an injunction restraining the further transaction of the business of the foreign corporation and the further

9

exercise of any corporate rights and privileges in this state." *Id.* at 1502(5). ReconTrust does not deny that the relevant Utah agency has not authorized it to transact business in Utah.

A review of the National Banking Act, however, makes clear that Congress intended that federal statute exclusively control the area of allowing a national bank to transact business nationwide. First, 12 U.S.C. § 26 gives the Comptroller of Currency the power to "determine whether the [national banking] association is lawfully entitled to commence the business of banking." That statute also refers to various requirements that the Comptroller must find that a national bank has met before it may begin conducting business. *See id.* Once the Comptroller has determined that a national bank may commence the business of banking, "the Comptroller shall give to such association a certificate, under his hand and official seal, that such association has complied with all the provisions required to be complied with before commencing the business of banking, and that such association is authorized to commence such business." 12 U.S.C. § 27(a). If, however, the Comptroller "has reason to suppose that the shareholders have formed the same for any other than the legitimate objects contemplated by" the National Banking Act, "the Comptroller may withhold from an association his certificate authorizing the commencement of business." *Id.* Finally, 12 U.S.C. § 42 provides that the "provisions of all Acts of Congress relating to national banks shall apply in the several States." This provision clearly signals that § § 26 and 27 are meant to be nationwide in scope.

Together, § § 26, 27, and 42 of the National Banking Act leave no room for Utah Code Ann. § § 16-10a-1501 and 1502. Those state statutes set out competing state requirements for a bank to transact business, assign a competing state authority to judge if the requirements are met, and provide for competing remedies for a banks' failure to meet the state's requirements. There is little question that by imposing additional burdens not found in federal law, these statutes

10

"significantly impair" a national bank's ability to do business in Utah. *See Watters*, 550 U.S. at 12.

Moreover, the same concerns about giving states destructive powers over national banks that supported a conclusion that complete preemption applied *Beneficial Nat'l Bank* are at play when it comes to state registration requirements for national banks. *See* 539 U.S. at 11. Under Utah Code Ann. § 16-10a-1501, a national bank is beholden to a Utah agency to accept for filing its application to transact business in Utah. If, for whatever reason, the Utah state agency does not do so and the national bank were subject to state law, the effect would be that the national bank would be precluded from doing business in Utah. The State of Utah, not the national government, would thus have the final control over whether a national bank could do business in this state. This possibility strengthens the conclusion that complete preemption applies to this state statute. *See Beneficial Nat'l Bank*, 539 U.S. at 11.

Based on the above, it is clear that given their exhaustive reach and protective function, §§ 26, 27 and 42 are intended to be the exclusive authority on what a national bank must do to transact business in any state. Accordingly, these federal statutes have the "requisite pre-emptive force to provide removal jurisdiction" based on Ms. Cox's state law claim under Utah Code Ann. § 16-10a-1501. *Beneficial Nat'l Bank*, 539 U.S. at 11.

This conclusion is further reenforced by numerous federal and state court decisions that have unanimously concluded that state law registration requirements for foreign corporations are preempted as to national banks. One of the earliest of these cases is *Steward v. Atlantic Nat'l Bank of Boston*, 27 F.2d 224 (9th Cir. 1928). In *Steward*, the Ninth Circuit held that an Arizona statute requiring registration for "foreign corporations" to "carry on, do or transact any business" in Arizona did not apply to national banks. *Id.* at 228. While the *Steward* court's exact holding

11

was that a national bank was not a foreign corporation under the Arizona statute, the reason the court so held was that "in the absence of unmistakably clear language, it will not be found that the state has attempted to exercise a regulatory power over national agencies established in aid of governmental purposes." *Id.*

The case of *Bank of Am., Nat'l Trust & Sav. Ass'n v. Lima*, 103 F. Supp. 916 (D. Mass. 1952) is also on point here. In that case, a national bank sued an individual for an accounting under Massachusetts law. *See id.* at 917. The individual brought the defense that because the bank was a "foreign corporation" that had not registered with Massachusetts, state statute barred the bank from bringing a suit in state court. *See id.* In rejecting this defense, the federal district court reasoned that:

> The bank in question is a national bank and an instrument of the national government. Its presence in the state is attributable to the national power, not to the state's permission. It would therefore seem that any attempt by the state to block its entry until it complied with certain conditions would violate the constitution and laws of the United States.

*Id.* at 917-18 (citation omitted). The court concluded that:

> From the foregoing it would appear that if the provisions of [Massachusetts General Laws] Chapter 181 [requiring registration by "foreign corporations"] are held to include national banks within the scope of their coverage, then the effect of that statute is to place national banks on the same level as foreign corporations as regards capacity to sue. Such a result is plainly unconstitutional[,] since it conflicts with the federal statute empowering national banks to sue as fully as natural persons. But I do not feel that it is necessary to declare Chapter 181 unconstitutional in its application to national banks, for it is commonly accepted that in the absence of clear and unequivocal language to the effect, national banks are generally not held to come within state statutory requirements relating to foreign corporations unless the legislative intent to treat such institutions as foreign corporations is clearly manifested in unmistakable language.

*Id.* at 918.

The case of *Association of Banks Ins., Inc. v. Duryee*, 55 F. Supp. 2d 799 (S.D. Ohio 1999) also applies here. In that case, the federal district court for Ohio reviewed various Ohio

12

state statutory regulations imposed on foreign corporations and held that they did not apply to national banks, reasoning that such "provisions constitute impermissible conditions upon the ability of a national bank to do business within the state." *Id*. at 812. Among other things, the court reasoned that "[g]ranting the authority to determine whether a foreign national bank has exceeded the scope of its authority to the Ohio secretary of state rather than the Comptroller of the Currency, who is charged under federal law with the responsibility, constitutes an unconstitutional impingement on the authority of the Comptroller." *Id.*

Many state courts have also uniformly found that state statutes requiring registration of foreign corporations do not apply to national banks. *See*, *e.g.*, *Indiana Nat'l Bank v. Roberts*, 326 So.2d 802, 803 (Miss. 1976) (holding state registration law did not apply to national banks, collecting state cases holding same).

Considering §§ 26, 27 and 42, as well as the numerous state and federal cases finding that state law registration statutes do not apply to national banks, the court is satisfied that Congress meant to completely preempt the area of requirements a national bank must meet before conducting business nationwide. Accordingly there is "no such thing" as a state statute that purports to legislate in those areas with respect to national bank. *Beneficial Nat'l Bank*, 539 U.S. at 11. Ms. Cox's claim against ReconTrust under Utah Code Ann. § 1501 therefore gives rise to federal question removal jurisdiction here.

### 2. Ms. Cox's claim under Utah Code Ann. § 57-1-21.

Ms. Cox's second state law claim that is completely preempted is under Utah Code Ann. § 57-1-21. That statute names several groups who may act as trustees in Utah (assuming certain conditions are met) and bars entities not in those groups from conducting trustee's sales in Utah. *See* Utah Code Ann. § 57-1-21. Persons potentially eligible to act as trustee under the statute

13

include members of the Utah state bar, certain depository institutions, and title insurance companies. *See id.* at § 57-1-21(1)(a)(i), (ii) and (iv). ReconTrust does not contend that it would be able to act as a trustee under this statute.

It is clear from the National Banking Act, however, that Congress intended that the authority to allow national banks to act as trustees should be governed by federal law except in some narrow circumstances. In 12 U.S.C. § 92a(a), Congress gives the Comptroller the power to allow national banks to act as trustees "when not in contravention of State or local law." But "[w]henever" a state allows a competitor of a national bank to act as a trustee, allowing a national bank to do so as well "shall not be deemed to be in contravention of State or local law." 12 U.S.C. § 92a(b). 12 U.S.C. § 92(a) further establishes the rules applicable to national banks acting as trustees, and sets for the penalties for failure to comply.

On its face, § 92a(b) has clear preclusive effect on any state law trustee regulations against national bank whenever the state allows a competitor to act as a trustee. And Utah Code Ann. § 57-1-21(1)(a)(ii) allows a "depository institution," which is unquestionably a competitor of a national bank, to act as a trustee. Accordingly, this state statute is completely preempted by federal statute, allowing for federal question removal jurisdiction.

The court's order in *Zabriskie v. ReconTrust Co.*, 2:08cv155 BSJ, Order of 11/12/08 (D. Utah) also supports this result. In *Zabriskie*, the court held that Utah Code Ann. § 57-1-21(3) was preempted by federal law. *See Zabriskie* Order at 12

In conclusion, because Ms. Cox's claims under Utah Code Ann. § 16-10a-1501 and Utah Code Ann. § 57-1-21 are in reality federal causes of action when brought against a national bank, removal is proper under federal question jurisdiction. As this court has subject matter jurisdiction under these grounds, it is not necessary to determine whether it would have

14

supplemental jurisdiction even in the absence of the RESPA claim. Moreover, there is no need at this point to determine whether to exercise jurisdiction over the state tort claims, because that precise issue has not been argued by the parties.

        **3.      Ms. Cox's arguments**.

Ms. Cox's invocation of *Cuomo* does not convince the court that either of the Utah statutes are not completely preempted. In *Cuomo*, the Supreme Court held that despite a federal regulation purporting to preempt any state enforcement action against national banks, states have always had the power to enforce non-visitorial powers over national banks. *See* 129 S.Ct. at 2717. Accordingly, while the attorney general of New York did not have the inherent executive power to demand records from a national bank in an investigation of whether the bank broke state fair lending laws, he was permitted to bring a court action against the bank to enforce those laws. *See id.* at 2722.

*Cuomo* did not address the question of whether state statutes purporting to impose on national banks requirements to register as foreign corporations or to act as trustees were preempted. If anything, *Cuomo* strengthens the Defendants' position. *Cuomo* points to the National Banking Act's mandate that states cannot exercise visitorial powers over national banks. *See id.* at 2715. *Cuomo* then explains that the Supreme Court has "always understood 'visitation' as the right to oversee corporate affairs." *Id*. at 2716.

Here, the Utah statutes in question purport to give a state agency the right to cut off a national bank's activities if the bank fails to comply with certain requirements, and gives the agency the power to determine if those requirements have been met. These powers strike the court as visitorial in nature. Granted, it is Ms. Cox, not the state, who is attempting to assert the right to enforce these visitorial powers against a national bank. But Ms. Cox relies on a state-

15

enacted statute that purports to grant litigants the right to bring actions or defenses based upon the bank's failure to comply with the statute. While *Cuomo* does not apply, then, it would not support Ms. Cox's position here if even if it did.

Ms. Cox's reliance on *Kleinsmith v. Shurtleff*, 571 F.3d 1033 (10th Cir. 2009) is also unavailing. While it is true that *Kleinsmith* upheld as constitutional Utah's power to impose requirements to serve as a trustee as a general matter, the Tenth Circuit did not address the question of whether an attempt to apply those requirements against a national bank would be preempted by federal law.

## II.     Dissolution of the State Court Injunction

The court exercised its power under 28 U.S.C. § 1450 to dissolve the state court injunction against all Defendants for various reasons. First, as she conceded at the hearing on this matter, Ms. Cox only alleged a factual basis to enjoin trustee's sales by ReconTrust. Even if the injunction were properly entered, which it was not, it should have been entered only against ReconTrust and not against any of the other Defendants.

Moreover, Ms. Cox did not have standing to seek to enjoin any other trustee's sale except the one relating to her property. She did not purport to bring her action as a class action or act as a private attorney general. She made no convincing argument in the state court or in this court as to why she could petition to stop ReconTrust from conducting trustee's sales of other people's properties.

Ms. Cox contends that Utah Code Ann. § 16-10a-1502(5) mandates that a court shall enjoin a non-registered foreign corporation from doing business in Utah, which justified the open-ended, statewide nature of the injunction. But of course, even assuming that this statute could have applied, it should only apply after the court has made factual findings.

Further, the court issued the injunction with no opportunity for the Defendants to be heard. While the court need not find that the failure to hold a hearing violated the Defendants' due process rights, there is little doubt that a hearing should have been held.

Most importantly, the court dissolved the injunction because, for the reasons stated above, the Utah statute upon which the injunction was based is preempted by federal law. That is, the National Banking Act precludes an action under Utah Code Ann. § 16-10a-1501 against a national bank. Accordingly, Ms. Cox's state law claim forming the basis for the injunction has no chance of success on the merits.

## CONCLUSION

It is for the foregoing reasons that the court issued its order of June 11, 2010.

SIGNED this 18th day of June, 2010.

BY THE COURT:

_____
Clark Waddoups
United States District Judge