JOHN CHRISTIAN BARLOW
40 N. 300 E. # 101
Saint George, Utah 84771
Telephone: 435-634-1200

E. Craig Smay
174 E. South Temple
Salt Lake City, UT 84111
Telephone: 801-539-8515

Attorneys for Plaintiff-Appellant Peni Cox.

---

IN THE UNITED STATES DISTRICT COURT, DISTRICT OF UTAH,
CENTRAL DIVISION

---

| | |
|---|---|
| PENI COX, an individual<br><br>*Plaintiff*,<br><br>vs.<br><br>RECONTRUST COMPANY, N.A., BANK OF AMERICA HOME LOANS SERVIC-ING; BANK OF AMERICA, FSB, NEW LINE MORTGAGE, DIVISION OF RE-PUBLIC, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; AND DOES 1-5,<br><br>*Defendants.* | **MEMORANDUM IN SUPPORT OF MOTION FOR INJUNCTION PEND-ING AN APPEAL**<br><br><br>Case No. 2:10-CV-492<br><br>Judge Clark Waddoups |

---

Plaintiff hereby submits her MEMORANDUM IN SUPPORT OF MOTION FOR IN-

JUNCTION PENDING AN APPEAL in accordance with Rule 62(c) of the Federal Rules of Civ-

il Procedure.

STATEMENT OF FACTS

On June 25, 2010 Cox timely submitted her Notice of Interlocutory Appeal.

---

<u>ARGUMENT</u>

Plaintiff asks that the court take Judicial Notice of Order granting remand filed in Jensen v. Re-

conTrust Co., 2:09cv927TC, Order of 12/16/2009 (D. Utah) (doc.13) in which Chief Justice Tina

Campbell, when presented with similar issues, ordered a Remand to State Court concluding that

no federal claims existed.  In Jensen, the District Court held:

> The first cause of action challenges whether Recontrust is able to do business in Utah
> based on various provisions of Utah law. The second cause of action challenges whether
> Recontrust is a qualified trustee based on various provisions of Utah law. And the third
> cause of action challenges whether Defendants have complied with provisions of Utah
> law in instituting foreclosure. Accordingly, there is no federal claim on which to base
> subject matter jurisdiction pursuant to § 1331. ... For the foregoing reasons, Plaintiff's
> motion to remand is granted.

Chief Justice Campbell obviously looked to *Watters v. Wachovia* 550 U.S. 1 (2007)

for clarification and a detail of what a State has authority to regulate regarding a National Bank:

> Federally chartered banks are subject to state laws of general application in their dai-
> ly business to the extent such laws do not conflict with the letter or the general purposes
> of the NBA. *Davis v. Elmira Savings Bank*, 161 U. S. 275, 290 (1896).  See also *Ather-
> ton*, 519 U. S., at 223. For example, state usury laws govern the maximum rate of interest
> national banks can charge on loans, 12 U.S.C. §85, contracts made by national banks "are
> governed and construed by State laws," *National Bank v. Commonwealth*, 9 Wall. 353,
> 362 (1870), and national banks' "acquisition and transfer of property [are] based on State
> law," *ibid* at 6.

The District Court found that it lacked jurisdiction since there was no federal ques-

tion, and subsequently remanded the case back to State Court.

    A.   <u>Utah Code § 16-10a-1501 Is Not an Exercise of Visitorial Powers, and There-</u>

<u>fore Not Preempted by the NBA.</u>

Utah Code § 16-10a-1501 relevantly states, "A foreign corporation may not transact

business in this state until its application for authority to transact business is filed by the divi-

sion." This is not a request for a company to produce its books or open itself up for investigation.

The statute makes no request for any private information, or any information that a company

could imagine as private.  Rather, the state requests that all companies that wish to do business within its borders register with the state. Since the statute does not exercise any visitorial powers, the NBA does not preempt the statute as an unauthorized exercise of visitorial powers.

      B.    <u>12 U.S.C. §§ 26, 27, and 42 Do Not Apply Here, and Therefore Do Not Preempt Utah Code § 16-10a-1501.</u>

      The District Court relied on 12 U.S.C. §§ 26, 27, and 42 to state that a National Bank can transact business nationwide, preempting all state law that may impede this.

      Section 26 relevantly states that the Comptroller has the power to "determine whether the association is lawfully entitled to commence the business of banking."  That statute also refers to various requirements that the Comptroller must find that a national bank has met before it may begin conducting the business of banking.  Once the Comptroller has determined that a national bank may commence the business of banking, "the Comptroller shall give to such association a certificate, under his hand and official seal, that such association has complied with all the provisions required to be complied with before commencing the business of banking, and that such association is authorized to commence such business." 12 U.S.C. § 27. If, however, the Comptroller "has reason to suppose that the shareholders have formed the same for any other than the legitimate objects contemplated by" the National Banking Act, "the Comptroller may withhold from an association his certificate authorizing the commencement of business." Id. Finally, 12 U.S.C. § 42 provides that the "provisions of all Acts of Congress relating to national banks shall apply in the several States." 12 U.S.C. § 42.

      These statutes together mean that it is the Comptroller, and not the states, which has the sole authority to grant an association a distinct privilege: that the association has the status of a 'national bank'. 12 U.S.C. §§ 26 and 27. The status of 'national bank' confers on an association

the ability to avail itself of federal law when it comes into conflict with contrary state law. *Barnett*, at 31.  This is an important and useful result, allowing national banks to operate more efficiently in many instances since they can rely on specific federal provisions in their operations. Id.  The Supreme Court illustrated this application in *Barnett*, where the Court held that federal law that permitted national banks to sell insurance in small towns preempted state statute prohibiting banks from selling most types of insurance.

In order for a national bank to avail itself of federal law in favor of state law, it must have a specific federal statute that grants such a privilege. *Watters*, at 12, Barnett, at 32-34, and *Franklin*, at 377-379.  Thus, in order for a national bank to do business within each state without any additional action, federal law must explicitly state that national banks have such a privilege. There is no such provision.  Since there is no federal law that specifically applies, preemption cannot and does not apply.

The District Court's rationale would appear that since an association has the status of 'National Bank', the name itself grants the privilege to do business within each state without any additional action.  This is incorrect.  The name itself does not grant any additional privileges. National Banks must still contend with the laws within each state, even though they are national in nature, unless specific federal law says otherwise. *Cuomo*, at 2720-21 and *Franklin,* at 377-379.  Congress has not passed a law that specifically waives a National Bank's obligation to register with a State agency. Until such a time as Congress establishes that national banks may do business within each state without any additional action, there can be no preemption of Utah Code § 16-10a-1501.

This Courts application of Watters confuses the element of necessary with the element of sufficient.  It is necessary that the association obtain the status of National Bank, allow-

ing it the privilege to operate as a National Bank and avail itself of the federal law, but such a status is not sufficient to pre-empt Utah State absent a specific federal statute.

Since there is no specific federal statute that contradicts Utah Code § 16-10a-1501, the district court erred in reasoning that federal law preempts Utah Code § 16-10a-1501.

When this court finds that there is no preemption of Utah Code § 16-10a-1501, then the implications of Utah Code § 16-10a-1502 necessarily follow.  Cox argues further that § 1502 is within the authority reserved to states to enforce their statutes, as § 1502 is the bite behind the bark of § 1501. *St. Louis*, at 660.  As the Supreme Court first articulated in *St. Louis* and later reaffirmed in *Cuomo*: "To demonstrate the binding quality of a statute but deny the power of enforcement involves a fallacy made apparent by the mere statement of the proposition, for such power is essentially inherent in the very conception of law."

C.     The Other Points of the District Court's Reasoning Are Unavailing.

The District Court makes several other arguments on why the NBA preempts Utah Statute § 16-10a-1501. None of them are availing.

First, the District Court suggests that since the Utah statute would "significantly impair" the Defendant's ability to do business in the State of Utah, citing *Watters* as its rationale, therefore federal law must preempt the statute. *Watters*, at 12.  This is an incorrect reading of *Watters*. Watters held that when state law significantly impairs the lawful authority of the NBA, the state regulations must give way.  *Watters* said nothing about impairing a national banks ability to do business.

A state's laws may "significantly impair" a national banks ability to do business with laws concerning fraud protection, taxes, etc. This does not mean that federal law preempts these laws. Rather, the state law must "significantly impair" a specific provision of the NBA in order

5

for federal law to preempt state law. Since no such provision of the NBA exists, federal preemp-

tion is incorrect.  Furthermore, it is not at all clear how registering with a state agency "signifi-

cantly impairs" the business of a national bank.

      Second, the District Court bolstered its conclusion of preemption by stating:

> Under statute, a national bank is beholden to a Utah agency to accept for filing its
> application to transact business in Utah.  If, for whatever reason, the Utah state agency
> does not do so and the national bank were subject to the state law, the effect would be
> that the national bank would be precluded from doing business in Utah.  The State of
> Utah, not the national government would thus have the final control over whether a na-
> tional bank could do business in this state. See Memorandum Decision, Doc 45.

      This assertion is too broad and overreaching to be valid.  The District Court fails to

acknowledge that there are underlying guidelines that a state agency must act upon when issuing

a license to do business in the state of Utah.  A court could find that a Utah agency's decision to

reject a National Bank's application to conduct business based on a specific guideline is in con-

flict with the National Bank Act, but such a conflict would only trigger upon the Utah agency's

rejection of a National Bank's application, not before.  Since the Defendants refuse to even ap-

ply, let alone find themselves rejected by the Utah state agency, they lack even standing to con-

test this issue. Allen v. Wright, 468 U.S. 737, 763.  Therefore, in no instance can anyone make

the implication that the statute to register to do business in the State of Utah is in conflict with

the National Bank Act.

      Even this, however, avoids the issue. National Banks must still contend with the laws

within each state, even though they are national in nature, unless specific federal law says other-

wise.  See *Cuomo* at 2720-21 and *Franklin*, at 377-379. Since there is no such federal provision,

the court cannot rule that the NBA preempts the state law.

Third, the District Court bolsters its holding by citing several courts that have reached similar conclusions concerning preemption of state law by the National Bank Act.  None of these are particularly availing.

The District Court first cites *Steward v. Atlantic Nat'l Bank of Boston*, 27 F.2d 224, 228 (9th Cir. 1928). In Steward, the court only held that "in the absence of unmistakably clear language, it will not be found that the state has attempted to exercise a regulatory power over national agencies established in aid of governmental purposes." It is not clear how the requirement that a state use unambiguous language when attempting to regulate national banks demands preemption here. It merely places the obligation that the state must clearly inform national banks and the courts that they intend to do so. As a matter of fact, the language of the Utah statutory provisions at issue is exceptionally clear. Therefore, even if this case was binding, it does not change the analysis.

The District Court then cites *Bank of Am., Nat'l Trust & Sav. Ass'n v. Lima*, 103 F.Supp. 916, 917-918 (D.Mass.). In *Lima*, the court held that a national bank is "an instrument of the national government," and therefore concluded that the state could not stop a national bank from suing a citizen.  This however, is not on point here. The Utah statute does not prevent a national bank from filing suit, but rather requires the national bank to register so that entities may look to whom they may issue a valid service of process.  Indeed, the Utah courts similarly hold that a foreign corporation can sue citizens within its borders even though it lacks a license to do business.  *L.B. Foster Co. v. Nelson Bros. Const. Co*., 18 Utah. 2d 430.  *Lima* therefore is not only not binding on the court, but completely unavailing as well.

D.    The NBA does NOT Preempt Utah Code Section 57-1-21(3) Since the NBA does NOT Grant State or National Banks the Power of Sale.

     1.    <u>Plaintiffs Position.</u>

The law regarding the acquisition and transfer of property by a national bank has been established for over 150 years: "[N]ational Banks' 'acquisition and transfer of property [are] based on state law.'" *Watters* at 6, quoting *National Bank v. Commonwealth*, 9 Wall. 353, 362 (1870). No matter what ReconTrust asserts itself to be, it still does not have the power of non judicial sale to foreclose on real property in Utah.

     Further more, it is clear from the National Banking Act that Congress intended that the authority to allow national banks to act as trustees should be governed by federal law except in some narrow circumstances. In 12 U.S.C. § 92a(a), Congress gives the Comptroller the power to allow national banks to act as trustees "when not in contravention of State or local law." But "[w]henever" a state allows a competitor of a national bank to act as a trustee, allowing a national bank to do so as well "shall not be deemed to be in contravention of State of local law." 12 U.S.C. § 92(a)(b). 12 U.S.C. § 92(a) further establishes the rules applicable to national banks acting as trustees, and sets forth the penalties for failure to comply.

     On its face, § 92(a)b has clear preclusive effect on any state law trustee regulations against national bank whenever the state allows a competitor to act as a trustee. And Utah Code Ann. § 57-1-21(1)(a)(ii) allows a "depository institution," which is unquestionably a competitor of a national bank, to act as a trustee. Accordingly, this state statute is completely preempted by federal statute, allowing for federal question removal jurisdiction.

     The prohibition in the Utah statute is § 57-1-21(3):

> The power of sale conferred by Section 57-1-23 may only be exercised by the trustee if the trustee is qualified under Subsection (1)(a)(i) or (iv).

     Section 57-1-23 describes the power of a trustee to conduct a non-judicial foreclosure by exercise of the power of sale; "or, at the option of the beneficiary, a trust deed may be forec-

losed in the manner provided by law for the foreclosure of mortgages on real property." The procedure for judicial foreclosure is set out in Utah Code § 78B-6-901 et seq.

Section 57-1-21(1)(a)(i) and (iv) qualifies as trustees members of the Utah State Bar and title insurance companies. The meaning of § 57-1-21(3), therefore is that, among the persons who may be trustees in Utah (members of the Utah State Bar, depository institutions including state and national banks, trust companies, title insurance companies, agencies of the United States, agencies of the Farm Credit Administration), only members of the Utah State Bar and title insurance companies may foreclose non-judicially.  See *Kleinsmith*. All others, including both state and national banks, may only foreclose judicially.  Trust deed beneficiaries who choose banks as trustees, necessarily opt to foreclose judicially.

Whether a depository or non-depository institution, it makes no difference.  In Utah the power of non judicial foreclosure sale is reserved only for members of the Utah State Bar and title insurance companies.  This statute bars depository and non-depository institutions alike from the non judicial power of Sale.

Taking the position that ReconTrust is a non depository association means that it is not in competition with associations deemed to be excluded from the non judicial power of sale. If not in competition then it can be excluded from the non judicial power of sale just the same. California law, not federal law, controls foreclosures in Utah.

2.    Defendant Position

If the Utah legislature wants to change how foreclosures are done in Utah it has to lobby the California legislature.

Defendants claims in their Reply Brief in Support of Motion to Dismiss (Doc. 65 at 5) that Section 92(a)a address the inapplicability of State laws.  Defendant claims that the associ-

ation must only abide by the laws of the State in which it acts as a fiduciary capacity.  This reasoning renders an absurd result:  California law, not federal law, controls foreclosures in Utah.

Theoretically that means every States' trustees law, except Utah's, could govern how trustees conduct foreclosures in Utah.  So, rather than making it easier for homeowners to meet with trustees, which the Utah statute did -- and which the 10th Circuit upheld as being a legitimate State interest (See *Kleinsmith*) -- homeowners are subject to the law of the state in which the trustee is "located."  Defendants position is just plain bizarre.

## CONCLUSION

Plaintiff respectfully requests the court for an order suspending, modifying, restoring, or granting an injunction while an appeal is pending.

RESPECTFULLY submitted this 29th day of July, 2010

/s/ John Christian Barlow

## CERTIFICATE OF SERVICE

THE UNDERSIGNED CERTIFIES that on this 29 day of July 2010, a true and correct copy of the foregoing was filed with the Clerk of Court via ECF and was therefore served by electronic mail to the following:


Michael Huber
8170 S. Highland Drive, Suite E5
Sandy, Utah 84093

Richard F. Ensor (10877)
VANTUS LAW GROUP, P.C.
3165 East Millrock Drive, Suite 160
Salt Lake City, Utah 84121
Telephone: (801) 833-0500
Facsimile: (801) 931-2500

Roy W. Arnold (Admitted pro hac vice)
REED SMITH LLP
Reed Smith Centre
225 Fifth Avenue
Pittsburgh, PA 15222
Telephone: (412) 288-3916
Facsimile: (412) 288-3063

Amir Shlesinger (Admitted pro hac vice)
REED SMITH LLP
355 South Grand Avenue, Suite 2900
Los Angeles, CA 90071-1514
Telephone: (213) 457-8000
Facsimile: (213) 457-8080

/s/ John Christian Barlow